**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

DAIRION E. MORGAN,                    )
                                      )
        Plaintiff,            )
                                      )
v.                                    )      Civil Action No. 5:23-00101
                                      )
FCI BECKLEY WARDEN YOUNG, *et al.*,   )
                                      )
        Defendants.           )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 80), filed on October 4, 2023. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 84.) Following the granting of extensions of time, Plaintiff filed his Response in Opposition and Declaration in Support on March 6, 2024. (Document Nos. 106 and 107.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 80) should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2023, Plaintiff, acting *pro se*,[1] filed his Complaint seeking relief for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) Plaintiff names the following as Defendants: (1) FCI Beckley Warden Young; (2) FCI Beckley Warden Heckard; (3) Doctor Roger Edwards; (4) Mr. D. Scott, OD Carpenter; (5) PA-C Amy Goode; (6) MA/Phlebotomist Melissa Suber; (7) FNP S. Vest; (8) Capt. Rodriguez; (9) Melissa Fox; and (10) Dr. Fain. (Id.) Plaintiff explains that since January 2019, Defendants have acted with deliberate indifference concerning his medical needs as a paraplegic. (Id.) As relief, Plaintiff appears to seek compassionate release from custody or placement in a Care Level 3 facility. (Id.)

Also on February 8, 2023, Plaintiff filed a Motion for Preliminary Injunction. (Document No. 2.) In his Motion, Plaintiff requested an order for his "immediate removal from FCI Beckley" and his placement in a Care Level 3 facility. (Id.) In support, Plaintiff stated that his removal from FCI Beckley and placement in a Care Level 3 facility is necessary for his "safety and so all of his medical needs can be met and dealt with." (Id.) Plaintiff alleged that he "has suffered for over 4 years through severe pain due to inadequate medical care and the excessive use of force." (Id.) Plaintiff stated that he is "a Care Level 3 and FCI Beckley is only equipped to provide care for Care Level 2 inmates." (Id.) Plaintiff further concluded that his "life is in danger everyday he is kept here at FCI Beckley due to numerous acts of violence every day and should [Plaintiff] find himself in a position, he cannot defend himself." (Id.) By Proposed Findings and Recommendation ("PF&R") entered on March 14, 2023, the undersigned recommended that Plaintiff's above Motion for Preliminary Injunction be denied. (Document No. 6.)

On March 23, 2023, Plaintiff filed his second Motion for Preliminary Injunction. (Document No. 21.) In his second Motion, Plaintiff again requested an order for his "immediate removal from FCI Beckley" and his placement in a Care Level 3 facility. (Id.) In support, Plaintiff

alleged that his life had been put in danger twice during his confinement at FCI Beckley. (Id.) First, Plaintiff alleged that his life was endangered when the medical straps broke while he was being transported in a medical van. (Id.) Second, Plaintiff alleged that his life was endangered when he fell while showering. (Id.) Plaintiff concluded that his transfer to Care Level 3 facility is necessary so Plaintiff can receive "medical treatment he needs to survive." (Id.)

On April 5, 2023, Defendant Scott filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 28 and 29.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 5, 2023, advising him of the right to file a response to the Defendant Scott's Motion to Dismiss. (Document No. 30.) By PF&R entered on April 6, 2023, the undersigned recommended that Plaintiff's second Motion for Preliminary Injunction be denied. (Document No. 32.) Also on April 6, 2023, Defendant Suber filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 28 and 29.) Notice pursuant to Roseboro was issued to Plaintiff on April 10, 2023, advising him of the right to file a response to the Defendant Suber's Motion to Dismiss. (Document No. 35.)

On April 13, 2023, Plaintiff filed his third letter-form Motion for Preliminary Injunction. (Document No. 38.) In his third letter-form Motion, Plaintiff again requested transfer "to a FMC low level Care Level 3 [facility] or home confinement in Lexington, KY at Plaintiff's mother's home." (Id.) In support, Plaintiff first alleged that he "is paralyzed from the waist down, with low points, and [he is] actually being classified as Care Level 3." (Id.) Second, Plaintiff claimed that his condition is unstable and he is "in need of a constant caretaker/provider." (Id.) Third, Plaintiff alleged that he "cannot defend or protect [himself] here at the medium-high FCI Beckley [due to] the inmates posing threats and vindicative behavior form certain staff." (Id.) Fourth, Plaintiff concluded that he is "still receiving inadequate medical disability treatment and [he] fears for [his]

life because [his] condition inside and out is worsening." (Id.) Plaintiff stated that his "wheelchair is in complete disrepair" and it has been eight months since his neurologist and physical therapist recommended that Plaintiff be evaluated by a pain specialist for chronic back pain. (Id.) Plaintiff further alleged he cannot receive the "intense everyday rehab treatment with machines/exercises" he needs at FCI Beckley. (Id.)

On April 17, 2023, Plaintiff filed his Response to Defendant Scott's Motion to Dismiss. (Document No. 41.) Defendant Scott filed his Reply on April 18, 2023. (Document No. 42.) On April 24, 2023, Plaintiff filed his Objections to the undersigned's PF&R entered on April 6, 2023. (Document No. 43.) On May 15, 2023, the United States filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 50 and 51.) Notice pursuant to Roseboro was issued to Plaintiff on May 17, 2023, advising him of the right to file a response to the United States' Motion to Dismiss. (Document No. 53.) On June 9, 2023, Plaintiff filed a Motion for Voluntary Dismissal of Defendants Scott and Suber. (Document No. 58.)

On June 9, 2023, Plaintiff filed his Notice Clarifying his Complaint. (Document No. 59.) By Order and Notice entered on June 22, 2023, the undersigned granted Plaintiff permission to amend his Complaint to specifically identify whether he was asserting a claim under the FTCA, Bivens, or both. (Document No. 64.) Additionally, Plaintiff was notified that his "Amended Complaint will supersede the original Complaint (Document No. 1), and there must be one integrated document that will provide the defendants with notice of the claims and allegations against them." (Id.) On July 28, 2023, Plaintiff filed his Response in Opposition to the United States' Motion to Dismiss. (Document No. 73.) Also on July 28, 2023, Plaintiff filed his Amended Complaint specifically stating that he was pursuing a claim under Bivens only. (Document No. 72.) As Defendants, Plaintiff names the following: (1) Warden Young; (2) Warden Heckard; (3)

4

Warden Holzapfel; (4) Dr. Roger Edwards; (5) PA Amy Goode; (6) FNP S. Vest; (7) Capt. Rodriguez; (8) HSA Melissa Fox; (9) Medical Director Dr. Fain; (10) Lt. John Doe 1; (11) Lt. John Doe 2; (12) Lt. John Doe 3; (13) Lt. John Doe 4; (14) Lt. John Doe 5; and (15) Lt. John Doe 6. (Id.) By Order entered on September 6, 2023, United States District Judge Frank W. Volk adopted the undersigned's PF&R and denied Plaintiff's first Motion for Preliminary Injunction. (Document No. 79.)

On October 4, 2023, Defendants Young, Heckard, Holzapfel, Edwards, Rodriguez, Fox, Goode, Vest, and Fain filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 80 and 83.) Specifically, Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) "Plaintiff failed to exhaust his administrative remedies relating to his Bivens allegations" (Document No. 83, pp. 8 – 10); (2) Plaintiff "missed the statute of limitations for any allegations that occurred prior to February 8, 2021, and those claims are forever barred" (Id., pp. 10 – 11); (3) "All named Defendants are entitled to qualified immunity" (Id., pp. 11 – 12); (4) "Following Egbert, Plaintiff's individual capacity claims are not cognizable under Bivens" (Id., pp. 12 – 24); (5) "Plaintiff's requested relief is not available in a Bivens action" (Id., pp. 24 – 25); (6) "Plaintiff's medical records are entitled to a presumption of regularity" (Id., pp. 25 – 27); and (7) "Plaintiff fails to establish Defendants Young, Heckard, Holzapfel, Fox, Fain, and Rodriguez's personal involvement" (Id., pp. 27 – 28).

As Exhibits, Defendants attached the following: (1) The Declaration of Misty Shaw (Document No. 80-1, pp. 2 - 3); (2) A copy of Plaintiff's "Inmate History ADM-REL" dated May 1, 2023 (Id., p. 5); (3) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" dated March 20, 2023 (Id., pp. 7 – 9); (4) The Declaration of Melissa Fox (Document No. 80-2, pp. 2 –

5); (5) A copy of Plaintiff's pertinent medical records (Id., pp. 7 – 269, Document No. 80-3, and Document No. 80-4, pp. 1 - 123); and (6) A copy of the Discipline Hearing Officer ("DHO") Report regarding Plaintiff's Incident Report of Refusing to Obey an Order in violation of Offense Code 307, Being Insolent to Staff Member in violation of Offense Code 312, and Possessing Drugs/Alcohol in violation of Offense Code 113 (Document No. 80-4, pp. 125 – 129). Notice pursuant to Roseboro was issued to Plaintiff on October 5, 2023, advising him of the right to file a response to Defendants Young, Heckard, Holzapfel, Edwards, Rodriguez, Fox, Goode, Vest, and Fain's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 80). (Document No. 84.)

By PF&R entered on October 26, 2023, the undersigned recommended that the District Court deny Plaintiff's third Motion for Preliminary Injunction. (Document No. 85.) By Order entered on November 7, 2023, Judge Volk noted the filing of Plaintiff's Amended Complaint and denied as moot Defendant Scott's Motion to Dismiss with Prejudice (Document No. 28), Defendant Suber's Motion to Dismiss (Document No. 33), the United States' Motion to Dismiss (Document No. 50), and Plaintiff's Motion for Voluntary Dismissal of Defendants Scott and Suber (Document No. 58). (Document No. 88.) By Memorandum Opinion and Order entered on January 11, 2024, Judge Volk adopted the undersigned's PF&Rs (Document Nos. 32 and 85) and denied Plaintiff's second and third Motions for Preliminary Injunctions (Document Nos. 21 and 38). (Document No. 99.) On March 6, 2024, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and a Declaration in Support. (Document Nos. 106 and 107.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may

refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the

non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support

Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05. A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

In the instant case, Plaintiff contends that Defendants have violated his Eighth Amendment rights by acting with deliberate indifference concerning his medical needs as a paraplegic.

(Document No. 72.) Specifically, Plaintiff complains that Defendants failed to provide the following: (1) "A proper wheelchair;" (2)"A caretaker;" (3) "Urinary supplies and care;" (4) "Safe, well-maintained handicap equipment (transport van, ramps, shower bench, etc.); (5) "Approval for a medically indicated transfer;" and (6) "Protection from staff assault." (Id.)

## 1.    <u>Failure to Exhaust</u>:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), <u>aff'd</u>, 54 Fed.Appx. 159 (4th Cir. 2003), <u>cert. denied</u>, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, 578 U.S. 632, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the

bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene

or abusive manner. <u>Id.</u>, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. <u>Id.</u>, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. <u>Id.</u>, § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning all his <u>Bivens</u> claims except for his claim regarding a medical transfer. (Document No. 80 and Document No. 83, pp. 8 – 10.) Although Defendants acknowledge that Plaintiff filed 21 administrative remedies during his incarceration, Defendants state that "only one remedy has received a final decision from Central Office – Remedy ID 992184-A1, 'CLD' – which regarded transfer for medical reasons." (Document No. 83, p. 9.) Defendants further argue that "the administrative remedy process was made available to Plaintiff, as evidenced by Plaintiff's twenty-one administrative remedy submissions, including filings at all three levels." (<u>Id.</u>, p. 10.) Defendants conclude that "Plaintiff's filing of this action is merely an attempt to circumvent the administrative remedies process and his claims should be dismissed." (<u>Id.</u>)

In support, Defendants submit the Declaration of Ms. Misty Shaw, a Paralegal for the Mid-Atlantic Regional Office. (Document No. 80-1, pp. 2 – 3.) Ms. Shaw declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (<u>Id.</u>, p. 2.) Ms. Shaw explains that she also has access to information regarding inmates in the BOP's custody. (<u>Id.</u>) Specifically, Ms. Shaw states as follows in her Declaration (<u>Id.</u>, pp. 2 - 3.):

* * *

5.    When reviewing an inmate's administrative remedy history in SENTRY, a final decision from Central Office is indicated when the Remedy-ID ends with the letter "A" and the status shows "CLO," "CLD," or "CLG."

16

6.      A review of Plaintiff's administrative remedy history reveals that Plaintiff filed or attempted to file twenty-one administrative remedies while incarcerated at FCI Beckley.

7.      However, of those remedies, only one remedy has received a final decision from Central Office – Remedy ID 992184-A1, "CLD" – which regarded transfer for medical reasons.

8.      No other remedies have been closed at the Central Office level.

\* \* \*

(<u>Id.</u>, pp. 2 - 3.) Ms. Shaw attached a copy of Plaintiff's "Administrative Remedy Generalized Retrieval. (<u>Id.</u>, pp. 7 – 9.)

In his Response in Opposition, Plaintiff argues that "administrative remedies are unavailable at FCI Beckley." (Document No. 106, p. 1.) Plaintiff claims that Defendants' Exhibits "regarding administrative remedies are so vague and full of unexplained abbreviations as to be useless as evidence." (<u>Id.</u>, p. 10.) Plaintiff asserts that "[h]ad Defendants included copies of the documents Plaintiff filed, along with the agency responses, it would have shown the machinations that make remedies unavailable at FCI Beckley." (<u>Id.</u>) Plaintiff concludes that "[t]he Court should not consider these vague, unexplained, and incomplete records in deciding the motion to dismiss." (<u>Id.</u>) As to summary judgment on the above issue, Plaintiff argues that his "declaration shows that the process at FCI Beckley operates as a dead end." (<u>Id.</u>, p. 12.) Plaintiff asserts that "[s]taff also routinely lie during the process (satisfying the misrepresentation element), delay and/or lose mail, and generally act in such a way as to thwart inmate attempts to exhaust." (<u>Id.</u>, pp. 12 – 13.)

In his Declaration, Plaintiff states "it is clear as day with the review of my administrative remedy history that I filed or attempted to file over twenty-one (21) administrative remedies within 4 or 5 years of being at FCI Beckley, and out of 21 only one remedy supposedly made it to Central

Office."[3] (Document No. 107, p. 67.) Plaintiff states that he "got several certified receipts and returns going to the Regional and Central Office, as well as denials, due to" institutional lockdowns for COVID 19 or disciplinary purposes. (Id.) Plaintiff asserts that lockdowns "will cause you to miss deadlines and have to wait to see a counselor or case worker will get an excuse of lockdown or letter head with staff member signature to resubmit the remedy which takes several more days, that's if the staff member even gives you a written excuse for remedy due to retaliation." (Id.) Plaintiff claims this is "on top of several of my BP8's and 9's never being filed or leaving the facility due to being thrown away  by staff or mailroom due to nature of BP." (Id.) Plaintiff states that "being on lockdown not having access to the mailroom to certify mail, it's best not to mail it cause 8 out of 10 of your BPs won't go out of the facility." (Id.) Plaintiff asserts that he has "tried BP9 or 10s sensitive to bypass the Warden's retaliation and [he] still gets rejected or denied by regional." (Id.) Plaintiff concludes as follows: "I've done my part in filing remedies, it's not my fault they're not making it even being certified. Just to be rejected, denied, or sent back to delay my timing to miss 20 day or 30 day deadlines." (Id., pp. 67 – 68.)

Based upon a review of the record, the undersigned finds that Defendants have met their burden proving that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint as to all claims except for the request for a medical transfer. Plaintiff does not dispute that he failed to properly exhaust his administrative remedies prior to filing his Complaint as to these claims. Plaintiff, however, contends that the administrative remedy process was unavailable. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at *

---

[3] Plaintiff incorrectly states that only one of his remedies made it to the Central Office. The record reveals four remedies made it to the Central Office, but three were rejected due to improper filing (Remedy ID Nos. 992184-A1, 1005142-A1, 1110891-A1, 1110891-A2). (Document No. 80-1, pp. 8 – 9.)

3; <u>Lee</u>, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); <u>also see</u> <u>Woodhouse</u>, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") To establish his claim of unavailability, Plaintiff "must adduce facts showing that he was prevent, through no fault of his own, from availing himself of that procedure." <u>Graham</u>, 413 Fed.Appx. at 663. In his Response and Declaration, Plaintiff merely indicates that the administrative process was unavailable because of retaliation, institutional lockdowns, and remedies being lost or destroyed. (Document Nos. 106 and 107.) Such bare and conclusory assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. <u>See</u> <u>Silling v. Erwin</u>, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). It is well established that a bare assertion that is unsupported by any detail will not satisfy a prisoner-plaintiff's burden of showing that remedies were unavailable. <u>Mendez v. Breckon</u>, 2021 WL 4268890, * 3 (W.D.Va. Sept. 20, 2021)(citation omitted); <u>Creel</u>, 2017 WL 4004579, at * 4 – 6 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust."); <u>Tosado v. Gilbert</u>, 2020 WL 6487685, * 3 – 4 (W.D.Va. Nov. 4, 2020)(stating that "numerous courts within the Fourth Circuit and elsewhere have held that 'unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fails to create a genuine issue of material fact sufficient to withstand summary judgment"). In his Response and Declaration, Plaintiff first concludes the administrative remedy process was rendered unavailable due to retaliation by staff. Plaintiff, however, fails to provide any specific details concerning the foregoing. Specifically, Plaintiff fails to provide information

such as the filing date of the administrative remedy, details of the retaliatory conduct, and the date of the retaliatory conduct. Although Plaintiff concludes he was subjected to retaliation for filing administrative remedies, Plaintiff indicates that such did not prevent him from filing further administrative remedies. (Document No. 107, p. 3 ¶ 9, p. 5 ¶ 12, p. 6 ¶ 14 and 15, p. 15 ¶ 37, p. 43 ¶ 94, p. 59 ¶ 120.) The record further reveals that Plaintiff has filed at least 21 administrative remedies during this time at FCI Beckley, which does not support a finding that the administrative remedy process was rendered unavailable due to Plaintiff's fear of retaliation. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period).

Next, Plaintiff claims that institutional lockdowns rendered the administrative process unavailable. Specifically, Plaintiff complains that lockdowns can cause an inmate to miss deadlines. Again, Plaintiff fails to provide any specific details concerning the foregoing. Plaintiff does not identify which administrative remedy ID number he was unable to fully exhaust due to a lockdown or the date of the lockdown. Furthermore, the mere fact that inmates are subject to lockdowns does not render the administrative process unavailable. Although a lockdown may have certainly caused a delay of Plaintiff's initial filing of a remedy or receipt of a response to an administrative remedy, Plaintiff could have sought an extension of time as to either period by demonstrating a valid reason for delay. See 28 C.R.F. §§ 542.15, 542.14(b). A valid reason for delay includes the following:

> [1] an extended period in transcript during which the inmate was separated from documents needed to prepare the Request or Appeal; [2] an extended period of time during which the inmate was physically incapable of preparing a Request for Appeal; [3] an unusually long period taken for informal resolution attempts; [4] indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.R.F. §542.14(b). Instead of proceeding with the administrative remedies process by seeking such an extension, Plaintiff indicates that he decided to forego the administrative process. Thus, the foregoing does not support a finding that institutional lockdowns rendered the administrative remedy process unavailable.

Finally, Plaintiff alleges that the administrative remedy process was rendered unavailable because staff often lost or destroyed inmate filings. Besides Plaintiff's self-serving statement, there is no evidence to support such a finding. Plaintiff wholly fails to offer any documents or factual details to corroborate his claim that filings were lost or destroyed. Plaintiff fails to state on what dates he mailed or submitted such remedies or the subject matter of the remedies. As explained above, such bare assertions that are not supported by any detail will not satisfy Plaintiff's burden of showing that remedies were unavailable. See Mendez v. Breckon, 2021 WL 4268890, at * 3; Creel, 2017 WL 4004579, at * 4 – 6; Tosado, 2020 WL 6487685, at * 3 – 4; Silling, 881 F.Supp. at 237. Furthermore, Plaintiff indicates that the date of his claims began in 2019. The SENTRY records reveal that from October 7, 2019 until March 17, 2023,[4] Plaintiff filed twenty-one administrative remedies (Remedy ID Nos. 992184-F1, 992184-R1, 992184-A1, 1005142-F1, 1005142-F2, 1005142-R1, 1005142-R2, 1005142-R3, 1095936-R1, 1005142-A1,[5] 1098947-R1, 1110891-F1, 1110891-R2, 1117664-F1, 1110891-A1, 1140121-R1, 1110891-A2, 1140121-R2,

---

[4] The Administrative Remedy Generalized Retrieval was printed on March 20, 2023.

[5] The undersigned notes that Remedy Nos. 1005142-A1, 1110891-A1, and 1110891-A2 were rejected by the Central Office. Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.*(citing *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d. 368 (2006)). Since Plaintiff's administrative remedies were rejected, such could not properly exhaust his administrative remedies. *See Pendleton v. Ames*, 2023 WL 2541967, * 5 (S.D.W.Va. March 16, 2023)(finding that plaintiff's grievance that was rejected as untimely, could not have properly exhausted his administrative remedies).

1154706-R1, 1110891-R3). (Document No. 80-1, pp. 8 – 9.) Plaintiff's ability to file a grievance

during this time period exhibits that the administrative remedy process was available to Plaintiff.

See Ferguson, 2016 WL 398852 at * 6(inmate's allegation that the administrative process was

unavailable was belied by evidence that inmate submitted other grievances within the same

period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that

inmate could not avoid summary judgment by simply asserting an unsupported allegation that his

grievances were not processed or destroyed, in light of documentary evidence showing that other

grievances were processed). As argued by Defendants, there is a "presumption of regularity[that]

attaches to the actions of government agencies," including the accuracy of prison records, such

that "in the absence of clear evidence to the contrary, courts presume that they have properly

discharged their official duties." United States Postal Service v. Gregory, 534 U.S. 1, 10, 122 S.Ct.

431, 151 L.Ed.2d 323 (2001); United States v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct.

1, 71 L.Ed. 131 (1926)); also see Almy v. Sebelius, 679 F.3d 297, 309 (4th Cir. 2012), Mira-Avila

v. Barr, 756 Fed.Appx. 329, 331 (4th Cir. 2019). The BOP's records are subject to the presumption

of regularity, there is no record of Plaintiff's fully exhausting any remedy except from Remedy ID

No. 992184, and Plaintiff has not submitted competent evidence to overcome this presumption.

See Sexton v. United States, 2021 WL 1199834, * 4 (S.D.W.Va. March 29, 2021)(J.

Volk)("Absent clear evidence that the BOP received the claim, the Court must presume that the

agents of the United States 'properly discharged their official duties.'") Viewing the evidence in a

light most favorable to Plaintiff,  the undersigned cannot find that the administrative remedy

process was unavailable or that Plaintiff exhausted any remedy except for Remedy ID No. 992184

(medical transfer). Accordingly, the undersigned respectfully recommends that Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 80) be

granted and Plaintiff's Amended Complaint be dismissed in view of his failure to exhaust his administrative remedies as to all claims except for his claim related to a medical transfer. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's unexhausted claims.

**2.    <u>Medical Transfer Claim (Remedy ID No. 992184)</u>:**

The undersigned will proceed to consider Defendants' Motion as it relates to Plaintiff's medical transfer claim (Remedy ID No. 992184). In his Amended Complaint, Plaintiff alleges that Defendants Young, Heckard, and Holzpfel acted with deliberate indifference by failing to approve Plaintiff for a medical transfer.

**A.    Improper Extension of <u>Bivens</u>.**

First, the undersigned considers whether Plaintiff's deliberate indifference claim under the Eighth Amendment constitutes an improper extension of <u>Bivens</u>. In his Amended Complaint, Plaintiff argues that Defendants Young, Heckard, and Holzpfel (current and former Wardens at FCI Beckley) have acted with deliberate indifference to Plaintiff's medical needs by failing to arrange for his medical transfer to a suitable facility. (Document No. 72, pp. 2 - 3.) Plaintiff alleges that he should be transferred to a Care Level 3 medical facility because he is unable to receive adequate and necessary medical care, medical supplies, and physical therapy at FCI Beckley. (<u>Id.</u>) Plaintiff states that Defendants Young, Heckard, and Holzpfel are responsible for approving medical transfers. (<u>Id.</u>)

In their Motion, Defendants argue that <u>Bivens</u> liability has not been extended to Plaintiff's above Eighth Amendment claim. (Document No. 80 and Document No. 83, pp. 12 – 23.) Defendants contend that Plaintiff's claim fails under <u>Egbert v. Boule</u> and <u>Ziglar v. Abbasi</u>. (<u>Id.</u>) Defendants note that the United States Supreme Court has only approved a <u>Bivens</u> cause of action

in three cases – <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>. (<u>Id.</u>) Defendants contend that Plaintiff's Eighth Amendment claim presents "a new context both because they diverge factually from the Court's three *Bivens* cases and because they raise potential special factors that the Court has not considered in the past." (Document No. 83, p. 14.) Defendants argue that "[a]side from the overarching constitutional theory at issue, this case shares little in common with *Carlson*." (Document No. 83, p. 15.) Defendants assert that "*Carlson* focused on an alleged Eighth Amendment violation against prison officials for failing to provide life-saving medical care to an inmate with asthma and intentionally disregarded medical advice, which led to the use of a contra-indicated drug and an inoperative respirator, and ultimately resulted in death." (<u>Id.</u>) Defendants claim that Plaintiff's claim "turns on allegation that individual Defendants acted with deliberate indifference and negligence to Plaintiff's medical condition, provided inadequate medical care, and subjected Plaintiff to cruel and unusual punishment, which he alleges, resulted in severe back pain and recurrent UTIs." (<u>Id.</u>) Defendants further claims that "Plaintiff did not have a diagnosis and recommendation for treatment that Defendants ignored or failed to implement, like in *Carlson*." (<u>Id.</u>, p. 16.) Citing non-binding authority, Defendants argue that "[o]ther courts have found a new context in Eighth Amendment cases where the medical condition and care at issue were different from *Carlson*." (<u>Id.</u>, pp. 16 – 17.) Finally, Defendants conclude that even though "[t]he factual difference between Plaintiff's allegations and *Carlson* are 'meaningful' on their own, [] they also raise 'potential special factors' that were never examined in that case." (<u>Id.</u>, p. 17.) Accordingly, Defendants conclude the foregoing would be an improper extension of <u>Bivens</u>. (<u>Id.</u>)

In his Response, Plaintiff argues that the "very notion that deliberate indifference claims are a new context is . . . absurd." (Document No. 106, p. 17.) Plaintiff states that "<u>Bivens</u> was expanded to encompass medical deliberate indifference claims in 1980 - - forty-four (44) years

ago – and literally thousands of such claims have been recognized since then." (Id.) Plaintiff concludes that Defendants are clearly mis-interrupting Egbert. (Id., pp. 17 – 18.)

As stated above, a Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395 -97, 91 S.Ct. at 1999. Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999; Hernandez v. Mesa, 589 U.S. 93, 99, 140 S.Ct. 735, 741, 206 L.Ed.2d 29 (2020)(In Bivens, "the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents.") In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment for a claim of sex discrimination, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment for a prisoner's claim of inadequate medical care, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See Egbert v. Boule, 596 U.S. 482, 486, 142 S.Ct. 1793, 1799-80, 213 L.Ed.2d 54 (2022)(noting that the Supreme Court has declined 11 different time to imply similar causes of actions in the years since Bivens was decided); FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996(declined to extend Bivens to permit suit against a federal agency); also see Bulger v. Hurwitz, 62 F.4th 127, 138 (4th Cir.

March 3, 2023)(rejecting request to extend *Bivens* to a prisoner's Eighth Amendment failure to protect and intervene claims against BOP officials); <u>Dyer v. Smith</u>, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend *Bivens* to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); <u>Tate v. Harmon</u>, 54 F.4th 839, 841-42 (4th Cir. 2022)(rejecting request to extend *Bivens* to conditions of confinement claim under the Eighth Amendment); <u>Annappareddy v. Pascale</u>, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend *Bivens* to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); <u>Earle v. Shreves</u>, 990 F.3d 774, 776 (4th Cir. 2021)(rejecting request to extend *Bivens* to claims of unlawful retaliation by prison officials for filing grievances in violation of the First Amendment); <u>Tun-Cos v. Perrotte</u>, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context). In 2017, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 134, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u> More recently, the Supreme Court in <u>Egbert</u> noted "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of action [such as <u>Bivens</u>], we have come to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." <u>Egbert</u>, 596 U.S. at 490, 142 S.Ct. at 1802(internal citations omitted). The Supreme Court

stated that "[i]n both statutory and constitutional cases, our watchword is caution." Hernandez, 589 U.S. at 101, 140 S.Ct. at 742; Tate, 54 F.4th at 844(stating that the Supreme Court's "recent admonitions are clear: '[T]he Judiciary's authority to [create a cause of action under the Constitution] is, at best, uncertain,' . . . ; courts must beware of 'arrogating legislative power'. . .; and 'our watchword is caution,'. . .")(internal citations omitted). The Supreme Court explained that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a *Bivens* remedy." Hernandez, 589 U.S. at 101, 140 S.Ct. at 742; also see Egbert, 596 U.S. at 502, 142 S.Ct. at 1809("[M]ore recently, we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.")

Although the Supreme Court called into doubt the validity of the "implied rights" in Bivens, the Supreme Court did not overturn Bivens. Id. The Supreme Court, however, "impose[d] a highly restrictive analysis for Bivens cases by (1) narrowing the precedential scope of Bivens, Davis, and Carlson and (2) imposing a broad standard of criteria that, if satisfied, require courts to reject any expansion of Bivens remedies." Tate, 54 F.4th at 844. The Supreme Court explained that when asked to extend Bivens, a Court should engage in a two-step inquiry. Hernandez, 489 U.S. at 102, 140 S.Ct. at 743. First, the Court should inquire "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" Id.(citation omitted). The Supreme Court clarified that its "understanding of a 'new context' is broad," thereby requiring the scope of the exiting Bivens causes of action to be narrowly construed. Id. Second, if a claim is found to arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." Id.(quoting Abbasi, 582 U.S. at 135, 137 S.Ct. at 1857); also see Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 561 (7th

Cir. 2022)(The two-part test used post-*Abbasi* to evaluate claims under *Bivens* remains the same after *Egbert*); Feao v. Ponce, 2023 WL 3213553 (C.D.Cal. March 3, 2023)(Although *Egbert* indicates that existence of "special factors" can itself create a new context, the court rejected defendants' argument that *Egbert* had the effect of collapsing the inquiry altogether and dispensing with the "next context" inquiry).

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 582 U.S. at 140, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment gender discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. Id. at 1854-55(citations omitted). The Abbasi Court explained that "[i]f the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In Tate, the Fourth Circuit recognized that a single fact distinguishing a case from Bivens, Davis, and Carlson, potentially can create a "new context." Tate, 54 F.4th at 846.

In his Amended Complaint, Plaintiff alleges that Defendants Young, Heckard, and Holzpfel acted with deliberate indifference to Plaintiff's medical needs by failing to arrange for his transfer to a suitable facility. Plaintiff contends that Defendants Young, Heckard, and Holzpfel disregarded his need for medical treatment and rehabilitation by failing to transfer him to a Care Level 3 facility, which resulted in Plaintiff suffering recurrent UTIs and worsening back pain. Thus, the undersigned first considers whether Plaintiff's above deliberate difference claim constitutes a "new context." To the extent Defendants argue for a very specific comparison of facts with Carlson requiring the death of the inmate and the exact allegations of deliberate indifference that were at issue in Carlson, this District has rejected such an approach. See Johnston v. United States, 2024 WL 35439, * 4 (S.D.W.Va. Jan. 3, 2024)(J. Faber)(citing Masias v. Hodges, 2023 WL 2610230, * 1 (4th Cir. March 23, 2023) and Langford v. Joyner, 62 F.4th 112 (4th Cir. 2023)). Conversely, Plaintiff argues for a very generalized approach that any Eighth Amendment claim for deliberate indifference to an inmate's serious health needs is well recognized and does not constitute a new context. The Fourth Circuit, however, rejected a very similar argument in Nellson v. Doe, 2023 WL 3336689 (4th Cir. 2023). In Nellson, the plaintiff alleged that Warden Coakley and Lieutenant Soule violated his Eighth Amendment rights by approving plaintiff's months-long placement in the Special Housing Unit ("SHU"), with no access to a walker or wheelchair, in deliberate indifference to his serious medical needs. Nellson, 2023 WL 3336689, at * 4. Although Mr. Nellson was alleging a deliberate indifference to his medical needs, the Fourth Circuit determined that his claims presented a different context because Mr. Nellson did not allege any direct or indirect involvement by defendants concerning his medical care and his challenge was purely to an administrative decision (his placement in the SHU). Id. The Fourth Circuit held that "administrative *placement* decisions fall outside *Carlson's* 'context.'" Id. The Fourth Circuit

29

explained that "[s]uch claims are meaningfully different from *Carlson* . . . because they implicate 'organization policies, administrative decisions, and economic concerns inextricably tied to inmate transfer and placement determinations." <u>Id.</u>; <u>also see</u> <u>Bulger v. Hurwitz</u>, 62 F.4th 127, 138 (4th Cir. 2023)(finding a deliberate indifference claim regarding a serious risk of harm an inmate faced regarding a transfer to a different facility was a new context); <u>Tate v. Harmon</u>, 54 F.4th 839, 846-87 (4th Cir. 2022)(finding a deliberate indifference claim that placement in general population without protection led to his death to be "materially distinct" from *Carlson*). Similar to the plaintiff in <u>Nellson</u>, Plaintiff does not allege any direct or indirect involvement by Defendants Young, Heckard, and Holzpfel concerning his actual medical care and Plaintiff's challenge is purely related to an administrative decision concerning Plaintiff's institutional placement. <u>See</u> <u>McKune v. Lile</u>, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators'' expertise."); <u>Meachum v. Farno</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP). Based upon the foregoing, the undersigned finds that Plaintiff's Eighth Amendment claim regarding his medical transfer presents a new <u>Bivens</u> context.

Next, the Court must determine whether <u>Bivens</u> should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." <u>Wilkie</u>, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." <u>Abbasi</u>, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); <u>Malesko</u>, 534 U.S. at 69, 122

S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. The undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. See Nellson, 2023 WL 3336689, * 5(citing Bulger, 62 F.4th at 140-41)("[T]he existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new Bivens cause of action.") Finally, the Federal Tort Claims Act authorizes claims for damages against the United States for certain intentional torts committed by federal officers.[6] See Millbrook v. United States, 569 U.S. 50, 54 – 57, 133 S.Ct. 1441, 185 L.Ed2d 531 (2013); also see Ball, 655 F.Supp.3d at 443-44(explaining that the FTCA offers an alternative remedy for "certain intentional torts committed by federal officers, including assault and battery").

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative

[6] An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA, however, does not create a new cause of action. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* Thus, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a); *also see Bellomy v. United States*, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994)(citing *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993); *Gibbs v. United States*, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency. *See Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). The Fourth Circuit has also recognized that "[a]n administrative claim must be properly presented." *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). Plaintiff clarified in his Amended Complaint that he was not pursuing a FTCA claim.

action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." <u>Id.</u> The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

<u>Id.</u>; <u>also see</u> <u>Bulger</u>, 62 F.4th at 141(Congress's decision not to include an individual-capacity damages remedy in the PLRA "speaks volumes and counsels strongly against judicial usurpation of the legislative function.") The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." <u>Jones v. Bock</u>, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing <u>Porter v. Nussle</u>, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent

problems of prison administration and reform." <u>Turner v. Safely</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." <u>Id.</u> Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." <u>Id.</u>, 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding <u>Bivens</u> to Plaintiff's medical transfer claim. <u>See</u> <u>Reid</u>, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); <u>Gehrke</u>, 2018 WL 1334936 at * 4(same); <u>Gonzalez</u>, 269 F.Supp.3d at 61(same).

Furthermore, the <u>Abbasi</u> Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." <u>Abbasi</u>, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." <u>Id.</u> The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>, 551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404). In <u>Abbasi</u>, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow an Eighth Amendment deliberate indifference claim regarding failure to transfer would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to an Eighth Amendment failure to transfer claim. See Nellson, 2023 WL 3336689, * 5(citations omitted)("We held in both *Tate* and *Bulger* that special factors do indeed counsel against extending *Bivens* in the prison context.") Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his Eighth Amendment failure to transfer claim. It is further recommended that the District Court grant Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" as to the above claim. The undersigned finds it unnecessary to consider the other reasons that Defendants Young, Heckard, and Holzpfel have submitted for dismissal.

**3.    Lack of Service Regarding John Doe Defendants:**

The undersigned finds that the John Doe Defendants should be dismissed due to the lack of service. Although officers of the Court are charged with *assisting* a plaintiff with service of process under 28 U.S.C. § 1915(d) due to *in forma pauperis* status, neither the Court nor the

USMS, are required to be *advocates* for the *pro se* plaintiff.[7] The Court has no responsibility to continue to search for the location of any unserved Defendant for the purpose of perfecting service of process for the Plaintiff. In <u>Skaggs v. Clark</u>, 2015 WL 269154 (S.D.W.Va. Jan. 21, 2015), United States District Judge Robert C. Chambers stated as follows:

> Notwithstanding the difficulties faced by an incarcerated plaintiff, it is not yet, and cannot become, the role of the courts to track down defendants on behalf of incarcerated plaintiffs. At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made. Only upon provision of such information – which is absent here – can the courts execute services.

<u>Skaggs v. Clark</u>, 2015 WL 269154, * 3 (S.D.W.Va. Jan. 21, 2015); <u>also see</u> <u>Ray v. Pursell</u>, 2017 WL 3707584 (S.D.W.Va. June 23, 2017)(same). The Court specifically notified Plaintiff of the following:

> Plaintiff is **NOTIFIED** that service of process cannot be effectuated on "John Doe" or "Jane Doe" defendants. If a defendant is not served, Plaintiff will not be able to prevail on his claim against that person. It is Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals who Plaintiff believes caused him injury.

(Document No. 76, p. 2, fn. 1.) Despite the foregoing notice, Plaintiff failed to provide the Court with any further identifying information for the John Doe Defendants. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the John Doe Defendants be dismissed without prejudice due to the lack of service.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 80),

---

[7] The undersigned notes that Plaintiff neither requested nor received *in forma pauperis* status. Plaintiff paid the Court's filing fee on February 24, 2023. (Document No. 5.)

**DISMISS without prejudice** Plaintiff's Amended Complaint against the John Doe Defendants for lack of service, and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 21, 2024.



Omar J. Aboulhosn
United States Magistrate Judge